### Nevling and Dillon v. Shapp

*James L. Jubelirer,* of *Jubelirer & Raycroft,* for plaintiffs.

*J. Shane Creamer, Attorney General,* and *Israel Packel,* for defendant.

CAMPBELL, P. J., August 5, 1971.—In the above companion cases, plaintiff, Nevling, is a registered Republican and plaintiff, Dillon, is a registered Democrat. Each brings class actions against Governor Shapp seeking damages in excess of $1,000,000. In brief, plaintiffs aver that during the gubernatorial campaign of 1970, Milton Shapp promised them that if they would vote for him and as a result he became Governor, he would eliminate the "patronage system" at the workers' level so that no State employe would be discharged because of political affiliation. Plaintiffs further aver that they voted for Governor Shapp· and after he became Governor he discharged numerous workers for political reasons, thus breaching a contractual relationship and causing them to suffer damage.

The Governor, through his personal counsel and the Attorney General, has filed preliminary objections raising two questions: First, that exclusive jurisdiction of the action is in the Commonwealth Court, and, secondly, a demurrer contending that the complaint fails to set forth a valid cause of action.

The Appellate Court Jurisdiction Act of July 31, 1970 (no. 223), 17 PS §211.401, provides as follows:

"(a) The Commonwealth Court shall have original jurisdiction of:

"(1) All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity, except (i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court, and (ii) proceedings under the Eminent Domain Code; . . .

"(b) The jurisdiction of the Commonwealth Court under this section shall be exclusive except as provided in section 201 of this act and except with respect

to actions or proceedings by the Commonwealth or any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas."

The reference to section 201 pertains to cases where the Supreme Court is granted original jurisdiction.

We squarely hold that exclusive jurisdiction of the above actions is in the Commonwealth Court. We believe the words *"(A)ll civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity . . ."* are broad enough to encompass the above captioned actions. When Governor Shapp replaced the employes, he was lawfully acting in his official capacity as Governor of the State of Pennsylvania. Only in his position as Governor of the Commonwealth could the highway workers be replaced by other employes. Certainly, he was acting in his official capacity when the workers were discharged. If, in doing so, he breached a contractual duty to plaintiffs, plaintiffs must maintain their cause of action in the Commonwealth Court.

Plaintiffs have cited lower court cases arising under the Act of May 26, 1931, P. L. 191, in support of their position that their suit is not against the Commonwealth but against Governor Shapp individually. We believe the cases cited to be inapplicable for the reason that the language of the Act of 1931 is substantially and fundamentally different. The Act of 1931 covered " [A]ll actions at law or in equity by which it shall be sought to compel a State officer to perform or to restrain him from performing any official act . . ." This act has been superseded by the Pennsylvania Civil Procedural Rules and the Appellate Court Jurisdiction Act above cited.

We believe our decision in this case makes sense. The Governor should not be required to defend actions

in any one or more of the 67 county courts of this Commonwealth. We believe the proper and convenient form is the Commonwealth Court.

Having so held, we see no necessity to dispose of defendant's demurrer. We would, however, make the following observation as pure dictum.

Plaintiffs are not suing for any illegal, malicious or intentionally harmful act of a public official, as such. Thus, the governmental immunity doctrine would appear to be inapplicable. On the contrary, plaintiffs seek recovery for the breach of a contract. The real question is whether or not there is a contract. We seriously doubt that any reasonable man would interpret a campaign statement as an offer to make a contract capable of being accepted by casting a ballot for the political candidate. The circumstances would appear such that the required preciseness, definiteness and intention of the parties is absent.

And now, August 5, 1971, defendant's preliminary objections are sustained.